# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CATCHINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 7901 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Magistrate Judge Morton Denlow |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Robert Catchings ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). In response, Defendant filed a motion to affirm the Commissioner's decision. Claimant raises the following issues in support of his motion: (1) whether the ALJ properly found that Claimant did not meet or medically equal a listed impairment; (2) whether the ALJ properly determined that Claimant could perform sedentary work with a sit/stand option; and (3) whether the ALJ posed hypothetical questions to the vocational expert ("VE") supported by the medical evidence. For the following reasons, the Court grants Claimant's motion, denies the Commissioner's motion, and remands the case to the Commissioner for further proceedings consistent with this opinion.

# I. BACKGROUND FACTS

## A. Procedural History

Claimant initially filed for DIB and SSI on April 7, 2006, alleging a disability onset date of November 28, 2001. R. 39–40. The Social Security Administration ("SSA") denied his application on July 3, 2006. *Id.* Claimant then filed a request for reconsideration, which the SSA denied on September 20, 2006. R. 66–74. Shortly thereafter, Claimant requested a hearing before an ALJ. R. 76–77.

On February 7, 2008, Administrative Law Judge Joel G. Fina (the "ALJ") presided over a hearing at which Claimant appeared with his attorney, Frank Tuzzolino. R. 8–38. Claimant and Glee Ann Kehr, a vocational expert, testified at the hearing. No medical expert testified. On March 26, 2008, the ALJ rendered a decision finding Claimant not disabled under the Social Security Act. R. 43–52. Specifically, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment; has the residual functional capacity ("RFC") to perform sedentary work; and can perform a significant number of jobs that exist in the national economy. R. 49–51.

Claimant then requested review of the ALJ's decision by the Appeals Council. R. 5–7. On December 1, 2009 the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. R. 1–4. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

B.  **Hearing Testimony—February 7, 2008**

1.  **Robert Catchings—Claimant**

At the time of the hearing, Claimant was forty-six years old, stood 6'2" tall, and weighed 350 pounds. R. 13. He attended school through the eleventh grade, but never graduated or received a GED. *Id.* Claimant found his last job through a temp service in 2003. R. 14. He worked at a factory for thirty-two to thirty-eight hours per week, lifting and stacking 50-100 pound boxes. *Id.* He left after three months because of back and ankle pain. *Id.* Claimant currently splits his time between living with his wife and his father. R. 17, 19. He has not worked since 2003 and receives public assistance through food stamps. R. 17.

Claimant testified that he could not work because of back and ankle pain. R. 15. Claimant has a history of back and ankle injuries. He was shot in the back, which was the initial source of his back pain. R. 16. More recently, Claimant fell in 2002 and injured his back. R. 15. Claimant also broke his right ankle in 2003. *Id.* The ankle injury required surgery and corrective hardware in his ankle, which was later removed. *Id.* Claimant also chipped a bone in his left ankle in 1986, had a hernia repair in 1995, and is currently awaiting a second hernia repair. R. 16. The last time Claimant saw a doctor was in December 2007 when Claimant went to the emergency room for back pain; the emergency room doctor told him to elevate his feet at waist height for the pain. R. 25–26. Claimant's only prescription medication is Vicodin, which he has taken since the 1990's. R. 24–25. He takes about five pills a day. R. 25.

Claimant testified to his physical limitations. He thought he could lift eight to ten pounds. R. 21. He can sit for only three minutes before he has to stand up due to pain, and his back pain increases the longer he sits. R. 21–23. He can stand for ten to fifteen minutes before he must sit down, and he can walk half a block at a time. R. 22. Sometimes he loses his balance while standing or walking because his left leg will give out. R. 23. Claimant experiences low back pain that shoots into his left leg. *Id.* At the hearing, Claimant described his pain as six on a scale of one to ten. *Id.* Claimant experiences pain and swelling in his ankles, which he testified was three or four on a scale of one to ten. *Id.*

Claimant also testified about the effects of his injuries on his daily activities. Claimant can tend to his personal needs, such as showering, shaving, and brushing his teeth. R. 17. Claimant cannot climb a ladder and has difficulty climbing stairs. R. 22. He also has trouble bending over, but he can put on socks and shoes. *Id.* He sleeps only five to six hours a night and wakes up from the pain. R. 27. He can cook some meals for himself and does occasionally shop for food, but he cannot cook any meals that require him to stand for a prolonged period of time. R. 18–19. Claimant's father generally goes to the grocery store, and if Claimant does accompany his father, he usually waits in the car. R. 19–20. When he goes to the mall or large stores like Wal-Mart, he rides in a motorized cart. R. 20. Claimant has a car, but his father drives him most places. R. 18–20. Claimant can ride long distances in the car. R. 20. He does not usually take public transportation. R. 19. Claimant testified he could not vacuum because the walking

agitates his ankles, and his wife does his laundry.  R. 18.  He can load but not unload the dishwasher, because of back pain from bending over.  *Id.*  He does not perform any yard work or take out the trash.  R. 19.  Claimant used to fish, play football and basketball, and ride bikes with his children, but cannot do so anymore because of back and ankle pain.  R. 28.

        2.        **Glee Ann Kehr—Vocational Expert**

The VE described Claimant's relevant work experience for the past fifteen years.  R. 30.  Claimant has previously worked at machine assembly, as a material handler, in merchandise delivery, as a security guard, and as a forklift driver.  *Id.*  Claimant performed the material handler and merchandise delivery positions at the heavy work level.  *Id.*  He performed the machine assembly and forklift positions at the medium work level, and the security guard position at the light work level.  *Id.*  The machine assembly and merchandise delivery positions were unskilled jobs, while the material handler, security guard, and forklift driver positions were low-end semiskilled.  *Id.*

The ALJ posed several hypothetical questions to the VE.  First, he asked whether a person could perform Claimant's past work, if the person had Claimant's age, education, work experience, and skill level; could lift twenty pounds occasionally and lift or carry ten pounds frequently in light work; could frequently balance and occasionally stoop, crouch, or climb stairs or ramps; could not operate foot controls, kneel, crawl, or climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to heights and moving machinery.  R. 30–31.  The VE answered that the hypothetical person could only perform

the security guard position, but that other jobs existed in the region that the person could perform.  R. 31–32.  The ALJ then asked the VE to assume the same factors and limitations, but with the additional restriction that the person would have the option to sit or stand.  R. 32.  The VE replied that the person could possibly perform some security guard positions in which the employer allowed the officer to sit.  *Id.*  The VE also listed several other jobs that the person could perform.  R. 33.

The ALJ then asked the VE to assume the same factors and limitations, but with a sedentary work restriction with a sit or stand option, and asked whether that person could perform Claimant's past relevant work.  R. 34.  The VE answered that the person could not, but that the person could perform other jobs available in the regional economy, including account clerk, telephone clerk, or order clerk.  *Id.*  In response to questioning by Claimant's counsel, the VE stated that a person could not work if he had to elevate his feet at waist height while seated, but that a person could perform sedentary work if he only had to elevate his feet twelve to sixteen inches off the ground.  R. 36–37.

**C.**   **Medical Evidence**

   **1.**   **Ankle Impairment**

Claimant slipped and fell on November 30, 2002, injuring his right ankle.  R. 199.  He went to the emergency room at Provena Saint Joseph Medical Center ("Provena"), where the medical staff diagnosed a fracture dislocation and reduced the fracture.  *Id.*  The treating physician ordered x-rays, which showed a spiral fracture of the fibula with lateral displacement of the talus.  *Id.*  Surgeons performed an open reduction and internal

fixation of the right ankle on December 17, 2002. R. 201–02. Claimant returned to Provena on March 4, 2003 and had a syndesmotic screw removed on April 23, 2003, once the ankle fracture healed. R. 195–96.

Even after the surgery, however, Claimant continued to complain of bilateral ankle pain and swelling after prolonged standing. R. 208. At a consultation for the Bureau of Disability Determination Services on June 17, 2006, Dr. Afiz Taiwo noted Claimant's ankles were tender on the medial aspect with moderate swelling. R. 208–11. Claimant described the pain as sharp and ranked the pain as four on a scale of one to ten. *Id.* He could toe walk but could not heel walk, due to ankle pain. R. 210. Dr. Taiwo's report found that Claimant can walk one block; can stand for four minutes and sit for ten without pain; and can lift, push, and pull twenty pounds. R. 209.

Dr. Richard Bilinsky performed a non-examining functional capacity assessment on June 28, 2006. R. 214–21. R. 221. He found that Claimant had full range of motion of the ankles without pain; could stand or walk for six hours and sit for six hours of an eight-hour day; and could occasionally climb stairs, balance, stoop, or kneel. R. 215–216, 221. Dr. Bilinsky thought that Claimant could lift ten pounds frequently and twenty pounds occasionally. R. 215.

2. **Back Impairment**

Claimant also complains of longstanding back pain. While Claimant does not present any medical records establishing back pain before 2006, he did state in his medical history to Dr. Taiwo that he was diagnosed with a herniated disc of the lumbar

region in 1996 as a result of a gunshot injury to his back in 1991. R. 208. The Diagnostic Imaging Services at Provena performed an x-ray of the lumbar spine on June 19, 2007 and found minimal degenerative changes in the lumbosacral junction and a slight tilt of the lumbar spine on the left side. R. 207. Dr. Taiwo noted tenderness in Claimant's lumbar region, an active range of motion of sixty degrees with pain, and extension within normal limits. R. 210. Claimant reported to Dr. Taiwo that his back pain is constant and aching, and ranked the pain as a six on a scale of one to ten. R. 208. Claimant also stated that the pain worsens with bending, lifting, standing, and sitting, and radiates to his left leg with occasional loss of feeling in the leg. *Id.*

Claimant went to the emergency room at Silver Cross Hospital three times in 2007 complaining of back pain: July 8, August 11, and December 8. R. 228–32. On August 11, 2007 doctors prescribed him Vicodin, and on December 8, 2007 doctors prescribed him Naprosyn. R. 230, 232.

### D.    The ALJ's Decision—March 26, 2008

After a hearing and review of the medical evidence, the ALJ determined that Claimant was not disabled under the Social Security Act. R. 43–52. The ALJ evaluated Claimant's application under the required five-step sequential analysis. *Id.* At step one, the ALJ found Claimant had not engaged in substantial gainful activity since November 28, 2001. R. 48. At step two, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the lumbar spine, status post ankle fracture, open reduction and internal fixation with hardware of the right ankle, umbilical hernia, and

obesity. R. 49. At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals a listed impairment, including major dysfunction of a joint or certain disorders of the spine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.04.

The ALJ then determined that Claimant has the RFC to perform sedentary work with a sit/stand option, except that Claimant cannot operate foot controls, kneel, crawl, or climb ladders, ropes, or scaffolds; can frequently balance but only occasionally stoop, crouch, or climb ramps or stairs; and must avoid concentrated exposure to unprotected heights and moving machinery. R. 49. In reaching this conclusion, the ALJ summarized Claimant's testimony regarding his difficulty sitting, standing, and walking. *Id.* The ALJ found that Claimant's medically determinable impairments could cause these symptoms and that Claimant's statements regarding his symptoms were "generally credible." *Id.* Even so, the ALJ concluded that these limitations do not render Claimant extremely limited in ambulating, and that Claimant's lumbar x-ray showed only mild degenerative disc disease. R. 50. The ALJ also evaluated the combined effect of his back and ankle pain with his obesity and concluded that the evidence supported an RFC at the sedentary work level. *Id.*

At step four, the ALJ determined Claimant could not perform any past relevant work. R. 51. At step five, the ALJ found that jobs existed in significant numbers in the economy Claimant could perform, including account clerk, telephone clerk, and order clerk. R. 51–52. Therefore, the ALJ concluded that Claimant was not disabled under the Social Security Act. R. 52.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court has jurisdiction to review the ALJ's decision. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The ALJ need not address every piece of evidence or testimony presented, but rather must provide a "logical bridge" between the evidence and the ALJ's conclusions, so that a court can assess the agency findings and afford the claimant meaningful judicial review. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt*

*v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739–40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

Social security regulations prescribe a five-step sequential analysis for evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i–v). Under this approach,

the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the burden shifts to the ALJ to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of his motion: (1) whether the ALJ properly found that Claimant did not meet or medically equal a listed impairment; (2) whether the ALJ properly determined that Claimant could perform sedentary work with a sit/stand option; and (3) whether the ALJ posed hypothetical questions to the VE supported by the medical evidence. The Court addresses each in turn.

**A.     The ALJ Insufficiently Assessed Whether Claimant Meets or Equals a Listed Impairment.**

At step three of the disability analysis, an ALJ must determine whether a claimant meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If a claimant meets or equals a listed impairment, he is presumptively disabled and does not need to make any further showing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). In deciding whether a claimant meets or equals a listed impairment, the ALJ must identify the

particular listing at issue and offer more than a perfunctory analysis of whether the claimant satisfies the criteria for the listing or has symptoms equal in severity to those in the listing. *Id.* Here, the ALJ identified two listings when performing the step-three analysis: major dysfunction of a joint and certain disorders of the spine. R. 49; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.04. Claimant argues that the ALJ's finding is not supported by substantial evidence.

The ALJ found that Claimant did not meet the severity of listing 1.02, major dysfunction of a joint, because he could ambulate effectively. R. 50. One of the requirements of listing 1.02 is that the major dysfunction of the joint "result[s] in [an] inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. The Listings define 'to ambulate effectively' as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2).

As an initial matter, Claimant argues that the ALJ could not have made a logical bridge between the record and the findings because he cited to no evidence following his

step-three finding. The ALJ provided no analysis under his step-three conclusions but rather blended the analysis with his RFC discussion. The ALJ could have organized the decision more effectively by clearly separating his step-three and step-four analysis. But blending the step-three and RFC analysis is not fatal in itself, so long as the ALJ at some point in his decision builds a logical bridge between the evidence and each conclusion. *See Jacobson v. Astrue*, 08 C 50173, 2010 WL 1539871, at *8–9 (N.D. Ill. Apr. 16, 2010) (upholding an ALJ's conclusion that a claimant did not meet a listed impairment even though the ALJ intermingled step-three and step-four analysis).

Unfortunately, the ALJ's later analysis failed to build the required logical bridge between the evidence and his finding that Claimant did not meet or equal listing 1.02. The ALJ found that Claimant could ambulate effectively, but he also found Claimant's testimony "generally credible" regarding the intensity, persistence, and limiting effects of Claimant's symptoms. R. 49–50. Problematically, portions of Claimant's testimony seemed to contradict a finding of effective ambulation. For example, Claimant testified that he can walk "maybe half a block" before he has to sit down. R. 22. The ALJ found this testimony generally credible, yet he did not consider whether it indicated an "inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). Several other portions of Claimant's testimony raised similar questions about whether he could ambulate effectively: he does not take public transportation, he uses a motorized cart at the store, and he has difficulty climbing stairs. R. 19–22. Each of these facts bears resemblance to examples of ineffective ambulation

spelled out in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). On remand, if the ALJ still finds Claimant's testimony generally credible on all these points, then he should consider whether Claimant's testimony establishes ineffective ambulation.

The Commissioner's brief points to several other facts in the record that might support the ALJ's finding on listing 1.02. Regrettably, the ALJ did not discuss this evidence, and under the *Chenery* doctrine this Court must confine its review to the grounds on which the ALJ made his finding. *See Spiva v. Astrue*, 628 F.3d 346, 352–53 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)). In his disability application, Claimant wrote that he can walk a block or a block and a half "before [his] back will bother [him]" and that he can walk for more than a block to the store or to the bus, though he needs to stop and rest "because of pain in [his] back and legs." R. 151, 167. But the ALJ's decision made no reference to this evidence. Likewise, the Commissioner's argument that Claimant could not meet the "anatomical deformity" requirement of listing 1.02 appeared nowhere in the ALJ's decision, so the Court will not consider the argument now.

In addition to listing 1.02, Claimant argues he met listing 1.03, surgical arthrodesis with inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. This listing turns on the same analysis of effective ambulation as listing 1.02. *See id.* If Claimant can ambulate effectively as defined in the regulations, he does not meet listing 1.02 or 1.03. On the other hand, if Claimant cannot ambulate effectively and meets the other requirements of listing 1.03, then he would have a listed impairment. On remand,

the ALJ should consider whether Claimant meets or equals listing 1.02 or 1.03.

The ALJ did adequately explain why Claimant does not meet listing 1.04, which lists certain disorders of the spine. R. 50. He found that Claimant's back injury was not severe under listing 1.04 because Claimant's x-rays showed only mild degenerative disc disease. *Id.* Although Claimant challenges all aspects of the ALJ's step-three finding, he does not explain how his condition satisfied listing 1.04. For example, he points to no evidence of nerve root compression, limited motion of the spine, or motor loss that would meet the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. As such, the x-rays cited by the ALJ constituted substantial evidence that Claimant did not meet or equal listing 1.04.

**B.      On Remand, the ALJ Should Revisit His RFC Finding.**

Because the ALJ erred in his step-three analysis, the Court need not determine whether the ALJ's RFC finding was also erroneous. Nevertheless, the Court wishes to highlight several omissions from the RFC analysis that merit further discussion on remand, should the ALJ find that Claimant does not meet or equal a listed impairment.

Before proceeding to step four of the disability analysis, an ALJ must determine a claimant's RFC by weighing all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184 (July 2, 1996). As part of this analysis, the ALJ must determine what weight to give the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188 (July 2, 1996). In reaching an RFC finding, the ALJ "must articulate, at least minimally, his analysis of the

evidence so that [a] court can follow his reasoning." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

In this case, the ALJ found that Claimant had the RFC to perform sedentary work, with the option to sit or stand. R. 49. Sedentary work is defined as work that:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Sedentary work requires a maximum of walking or standing for two hours total in an eight-hour workday. SSR 83-10, 1983 WL 131251, at *5 (1983). As the regulations make clear, sedentary work has its own minimum requirements and is not simply a default conclusion when a claimant cannot perform at higher levels.

Here, the ALJ provided reasons for ruling out higher exertional levels but failed to consider whether Claimant could meet the minimum requirements of sedentary work. Once again, the ALJ's finding that Claimant was "generally credible" seemed to conflict with his conclusions. For example, Claimant testified that he can stand for ten to fifteen minutes before he must sit back down, and can walk only half a block. R. 22. Because sedentary work requires walking or standing for up to two hours in a day, the ALJ should determine whether Claimant can perform this requirement given his subjective limitations. Likewise, Claimant testified that he has difficulty sitting and has to "probably get up every three minutes." R. 21–22. The ALJ should determine whether

this evidence is credible, and if so, whether Claimant can remain productive enough to work at the sedentary level.

Finally, Claimant testified that he elevates his feet at waist height for his back pain, on the advice of an emergency room doctor. R. 25–26. The VE testified that if Claimant must keep his legs elevated at waist height, he could not perform sedentary work, but if he only needed to elevate them twelve to sixteen inches, he could perform the work. R. 36–37. Yet the ALJ's RFC finding was wholly silent on whether Claimant must elevate his legs. On remand, the ALJ should consider this issue and determine whether and at what height Claimant must elevate his legs.

C.     **On Remand, the ALJ Should Revisit His Step-Five Finding.**

If the ALJ's RFC finding changes on remand, he will of course need to revisit his step-five finding and consider whether it is still supported by the VE's testimony. When presenting hypothetical questions to a VE, an ALJ "must include all limitations supported by medical evidence in the record." *Similia v. Astrue*, 574 F.3d 503, 520 (7th Cir. 2009) (internal quotations omitted). The VE here testified that a hypothetical person with Claimant's RFC could perform a significant number of jobs in the national economy, and the ALJ based his step-five conclusion on this testimony. R. 33–34, 51–52. If the ALJ proceeds to step five analysis on remand, he must revisit his step-five finding in light of any additional limitations he may add to Claimant's RFC.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court grants Claimant's motion to reverse the final decision of the Commissioner, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED THIS 28th DAY OF FEBRUARY, 2011.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**


**Copies sent to:**

| | |
|---|---|
| Ashley S. Rose | Jack Donatelli |
| Law Office of Ashley S. Rose | United States Attorney's Office (NDIL) |
| 799 Roosevelt Road | 219 South Dearborn Street |
| Building 6, Suite 104 | Suite 500 |
| Glen Ellyn, IL 60137 | Chicago, IL 60604 |
| | |
| Counsel for Plaintiff | Charles R. Goldstein |
| | Special Assistant United States Attorney |
| | Social Security Administration |
| | 200 W. Adams, Suite 3000 |
| | Chicago, IL 60606 |
| | |
| | Counsel for Defendant |